# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENDA JANETTE SHORTNACY,    )
    )
       **Plaintiff,**    )
    )
**v.**    )       **Case No. CIV-13-297-HE**
    )
CAROLYN W. COLVIN,    )
**Acting Commissioner of the**    )
**Social Security Administration,**    )
    )
       **Defendant.**    )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Brenda Janette Shortnacy brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 14, hereinafter "R.___"). The parties have briefed their positions and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her application for DIB on March 8, 2010.[1]  R. 61, 130-33.  Plaintiff alleged a disability onset date of November 8, 2009, and sought benefits on the basis of depression, anxiety attacks, back problems, and skin problems.  R. 169, 174. Following denial of her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ, which was held on September 28, 2011.  R. 61-64, 67-81.  In addition to Plaintiff, a vocational expert appeared and testified at the hearing.  R. 27, 44-48.  The ALJ issued an unfavorable decision on October 31, 2011.  R. 12-21.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 8, 2009.  R. 14; *see* 20 C.F.R. §§ 404.1505(a), .1520(b).  At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, panic disorder with agoraphobia, anxiety disorder, and obesity.  R. 14; *see* 20 C.F.R. § 404.1520(c).  At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  R. 15-16; *see* 20 C.F.R. § 404.1520(d).

---

[1] Plaintiff also sought Supplemental Security Income ("SSI") benefits at this time.  R. 51-55; Pl.'s Br. (Doc. No. 16) at 6.  Plaintiff does not appeal in this action the denial of SSI benefits.  *See* Compl. (Doc. No. 1) ¶¶ 1, 3.  References to Plaintiff's Brief use the ECF pagination.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments.  R. 16-19; *see* 20 C.F.R. § 404.1520(a)(4)(iv).  The ALJ found that Plaintiff had "the [RFC] to perform a full range of work at all exertional levels," but subject to nonexertional limitations.  R. 16.  Rather than describing these nonexertional limitations, however, the text of the decision simply notes, "-0-0-0-0-0-0."  R. 16.  The Appeals Council addressed this error in its Notice denying Plaintiff's request for review:

> [T]he Council notes the Residual Functional Capacity (RFC) in Finding No. 6 of the Administrative Law Judge's decision contains a typo and omits the non-exertional limitations.  An audit of hearing recording reveals the RFC's non-exertional limitations to include the following: SVP 2 work, unskilled, limited interaction with coworkers [and] supervisors, and no exposure to the general public.

*See* R. 2 (citation omitted); *see also* R. 45 (ALJ, during administrative hearing, describing nonexertional limitations in a hypothetical posed to the vocational expert); SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (noting that ALJs may classify jobs according to exertional or skill level and that a specific vocation preparation (or "SVP") time of 1 or 2 corresponds to unskilled work).  Based on this RFC assessment, the ALJ determined at step four that Plaintiff was unable to perform any of her past relevant work of dishwasher, hand packager, nursing home housekeeper, and dietary aide, all of which require unskilled work at the medium exertional level.  R. 19.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform.  R. 19-20.  Taking into consideration a vocational expert's testimony regarding the degree of erosion to Plaintiff's occupational base caused

by Plaintiff's nonexertional limitations, the ALJ concluded that Plaintiff could perform the occupations of housekeeping cleaner, merchandise marker, and extrusion press operator. R. 20. The ALJ held that all of these occupations offer jobs that exist in significant numbers in the national economy. R. 20; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), .1566. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 20.

Plaintiff's request for review by the Appeals Council was denied on January 25, 2013. R. 1-6. Thus, the October 31, 2011, determination of the ALJ (as amended by the Appeals Council's insertion of nonexertional limitations) is the Commissioner's final decision. S*ee* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met.

*Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff raises several claims on appeal. Plaintiff's first contention of error is that the ALJ failed to fulfill his duty to develop the record by neglecting to order formal testing of Plaintiff's intellectual functioning and, on account of that failure, the ALJ improperly failed to consider whether Plaintiff's intellectual impairment met or equaled Listing 12.05C (intellectual disability).[2] Plaintiff argues that medical evidence obtained after the ALJ's decision was issued demonstrates that this alleged error was not harmless. Plaintiff additionally asserts that the ALJ's RFC is not supported by substantial evidence. *See* Pl.'s Br. at 5-30.

### A. *Whether the ALJ Erred by Failing to Develop the Record, Thereby Preventing an Analysis of Listing 12.05C*

The Tenth Circuit has discussed the balance that must be struck in a disability

---

[2] On August 1, 2013, after the ALJ's decision was issued in this matter, the SSA announced a final rule to replace the term "mental retardation" with "intellectual disability" in the Listings, noting that "the term 'mental retardation' has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,499 (Aug. 1, 2013). The change in terminology did not substantively alter the Listings. *See id.* at 46,501. In this Report and Recommendation, the undersigned uses the terms "mental retardation" and "intellectual disability" interchangeably due to reference to the former term in the medical records as well as the ALJ's decision.

determination between a claimant's burden to prove her claim and the Commissioner's

burden to develop the record:

> In making a determination regarding disability, the ALJ "shall develop a complete medical history," which includes a "reasonable effort" to obtain records from the claimant's treating physician. 42 U.S.C. § 423(d)(5)(B). Regulations clarify this statutory duty. Specifically, 20 C.F.R. § 404.1512(d) states that "before we make a determination that you are not disabled, we will develop your complete medical history." That regulation also makes clear, however, that the social security claimant has an obligation to assist the ALJ in its duty:
>
>> (a) General. In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
>>
>> . . . .
>>
>> (c) Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.
>
> 20 C.F.R. § 404.1512(a), (c).
>
> Given this statute and regulation, we have explained that the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised. Thus, an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (alterations, citations, and internal

quotation marks omitted). The *Maes* court further explained that when a claimant is represented by counsel, the ALJ may rely upon the claimant's counsel to structure the claimant's case and to identify any issue requiring further development. *See id.* When a claimant is unrepresented at the hearing, or is represented by a non-attorney, the ALJ's duty to develop the record "is particularly acute." *Miracle v. Barnhart*, 187 F. App'x 870, 874 (10th Cir. 2006); *see Sneed v. Barnhart*, 88 F. App'x 297, 300 (10th Cir. 2004) (referring to a "heightened duty" when claimant proceeds pro se).

In the administrative proceedings, Plaintiff was represented by Ms. Patricia Parvin. R. 5-8, 29, 65, 66. Although not an attorney, Ms. Parvin represents Social Security claimants, including Plaintiff, in a professional capacity. R. 65-66 (reflecting that Plaintiff appointed Ms. Parvin as her representative pursuant to a contingency fee agreement). Nonetheless, the undersigned has assumed that the ALJ was under a heightened duty in this case due to Plaintiff's lack of representation by a licensed attorney during the administrative proceedings.

In this appeal, Plaintiff (now represented by legal counsel) claims that the ALJ erred in not requesting intelligence testing for Plaintiff on the basis on a medical source opinion by Robert Schlottman, Ph.D. *See* Pl.'s Br. at 18-21. Dr. Schlottman, a consulting physician who examined Plaintiff one time in connection with her application for benefits, issued a Mental Status Examination Report on June 2, 2010. R. 273-75, 277. In his Report, Dr. Schlottman discussed Plaintiff's history and basis for seeking benefits and described Plaintiff's performance on a mental status examination. R. 273-75. Based on his examination, Dr. Schlottman diagnosed Plaintiff with major depressive disorder,

dysthymic disorder, and an unspecified personality disorder.  R. 275.  The report also noted that it appeared Plaintiff was "functioning in the mild mentally retarded range of intelligence, but this would need to be confirmed," or a diagnosis "[r]ule[d] out," "by more formal testing procedures."  R. 275.

According to Plaintiff, the ALJ was obligated by Dr. Schlottman's statements to develop the record further regarding Plaintiff's possible intellectual functioning, specifically through obtaining a consultative examination that included formal testing. *See* 20 C.F.R. § 404.1519.  The undersigned disagrees.  In explaining the duty placed upon the ALJ with respect to development of the record, the Tenth Circuit has emphasized that the Commissioner "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).  "The decision to purchase a consultative examination will be made on an individual case basis . . . ." 20 C.F.R. § 1519.  Under a previous version of the relevant regulation, the Tenth Circuit held that a consultative examination is often, but not always, required in the following circumstances: (1) "there is a direct conflict in the medical evidence requiring resolution"; (2) "the medical evidence in the record is inconclusive"; or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166 (citing prior version of 20 C.F.R. § 404.1519a).

The current version of this regulation further prescribes:

(b) Situations that may require a consultative examination.  We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.  Some examples of when we might purchase a consultative examination to secure needed medical

evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
>
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); *see also id*. §§ 404.1512(e), .1517, .1519b.

None of the considerations noted in *Hawkins* or the factors cited in § 404.1519a(b) apply here to demonstrate error by the ALJ. There was no conflict or inconsistency in the evidence, no inconclusive or lacking evidence, no diagnosis of mild mental retardation, and no change in Plaintiff's condition reflected in the record before the ALJ. Rather, there was a single consulting examiner opinion that notes the possibility that Plaintiff was functioning in the range of mild mental retardation. *See* R. 273-75. Dr. Schlottman did not opine that formal intelligence testing was necessary for him to properly produce his Mental Status Examination Report. Nor did he state that the ultimate opinions expressed in the Report—a report requested specifically for use in determination of Plaintiff's DIB claim—were incomplete or inaccurate due to any lack of such formal testing. R. 273, 275; *cf. Hawkins*, 113 F.3d at 1166; 20 C.F.R. § 1519a(b).[3]

_____

[3] Although Plaintiff represents in her brief that "Dr. Schlottman opined that formal IQ testing was needed," Dr. Schlottman's actual opinion merely stated that "more formal testing procedures" would be needed if there was to be *confirmation* of his belief that

To order an additional consultative examination, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167. It ordinarily is the *claimant's* burden to raise the issue sought to be developed, which must be substantial on its face. *Id.* Only when a claimant has presented sufficient evidence "to suggest a reasonable possibility that a severe impairment exists" does it become the ALJ's responsibility to order a consultative examination, "if such an examination is necessary or helpful to resolve the issue of impairment." *Id.*

Here, there is no contention or indication in the record that Plaintiff raised this issue to the ALJ through her representative or otherwise. Plaintiff did not seek benefits on the basis of intellectual disability. R. 174; *cf.* R. 30 (Plaintiff's representative stated to the ALJ at the hearing that Plaintiff "doesn't meet a listing"). Nor was there any communication by Plaintiff to the ALJ or the Appeals Council suggesting that the record was lacking in any manner. While the ALJ's duty regarding development of the record was "more acute" because Plaintiff was uncounseled, the ALJ was not required "to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *See Hawkins*, 113 F.3d at 1168 (noting that the ALJ must develop the

---

Plaintiff appeared to be functioning in the mild mentally retarded range of intelligence. *Compare* R. 275, *with* Pl.'s Br. at 19-20. The ALJ accepted that conclusion in his assessment of Plaintiff's RFC. *See* R. 19 ("[Plaintiff] is functioning in the mild mentally retarded range of intelligence."). Dr. Schlottman did not specify that the referenced testing procedures should be "IQ testing"—i.e., the type of testing required for a Listing 12.05C analysis. *See* 20 C.F.R. pt. 404, subpt. P app. 1 § 12.05C; R. 275.

record in a manner that is consistent with those material issues that are raised).

In *Sneed*, the Tenth Circuit rejected an argument that the ALJ had failed to adequately develop the record under circumstances similar to these: a pro se claimant made minimal references to a possible low IQ and relied on isolated medical statements to argue that the ALJ should have ordered an additional consultative exam for IQ testing. *See Sneed*, 88 F. App'x at 299-300. The Tenth Circuit disagreed, holding that the record contained sufficient evidence to evaluate the claimant's mental impairments. *See id.* at 301. Here, as in *Sneed*, the ALJ "did not ignore the intelligence evidence." *See id.* Rather, the ALJ thoroughly discussed Dr. Schlottman's opinion and also noted that the record showed Plaintiff to be functioning in the mild mentally retarded range of intelligence. R. 17, 19.

The ALJ's failure to purchase a consultative examination was not erroneous given that Plaintiff failed to raise the issue and that the issue was not substantial on its face. *See Hawkins*, 113 F.3d at 1167. Dr. Schlottman's suggestion, based upon a one-time examination, did not "suggest a reasonable possibility that a severe impairments exists" in the midst of evidence that Plaintiff had past work experience as a nursing home dietary aide and housekeeper (among other jobs), which included supervisory experience, and that Plaintiff's treating physician had found that Plaintiff's "[i]ntellectual functioning appears average, abstract thinking appears appropriate, insight and judgment are fair." *See* R. 182-89, 310, 311; *Hawkins*, 113 F.3d at 1167; 20 C.F.R. pt. 404, subpt. P app. 1 § 12.00(D)(3). *See generally* 20 C.F.R. § 404.1520(c) (defining "severe impairment"). Bill Buffington, M.D., examined Plaintiff a few weeks prior to Dr. Schlottman and made

no mention of mental retardation; rather, Dr. Buffington opined that Plaintiff was alert and oriented, had an "average" fund of knowledge, had no memory deficits, and had appropriate affect and mood. R. 266-72.

"The isolated comments about [Plaintiff's] possible limited intelligence, when viewed as part of the entire record, do not sufficiently raise a question about [her] intelligence." *See Sneed*, 88 F. App'x at 301. The ALJ reasonably relied upon Dr. Schlottman's Mental Status Examination Report as evidence relevant to the impairments cited by Plaintiff and, more generally, to Plaintiff's ability to work, rather than as a trigger to uncover whether there might be an additional impairment upon which Plaintiff possibly might rely in seeking benefits. "The few instances in the record noting diminished intelligence did not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record, even under the heightened standard" applied to pro se claimants. *See id.* (alterations, citation, and internal quotation marks omitted).

It follows that the ALJ's failure to consider a possible intellectual disability in a Listing 12.05C analysis does not undermine the ALJ's determination that Plaintiff was not disabled. In finding at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the presumptively disabling impairments in the Listings, the ALJ gauged Plaintiff's impairments against the criteria of Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders). R. 15-16; *see* 20 C.F.R. § 404.1520(d). Plaintiff argues that the ALJ erred in not extending this analysis to Listing 12.05C (intellectual disability). Pl.'s Br. at 18-21; *see*

*also* 20 C.F.R. pt. 404, subpt. P app. 1 § 12.05C. Listing 12.05C prescribes that the required level of severity for the disorder of intellectual disability is met when there is evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" with "onset of the impairment before age 22," shown by a valid IQ score of 60-70, and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P app. 1 § 12.05C. Plaintiff contends that the ALJ was required to order IQ testing, the results of which presumably would have been valid and in the relevant 60-70 range and thereby would have directed a finding by the ALJ that Plaintiff's mental impairment met or medically equaled Listing 12.05C. *See* Pl.'s Br. at 20-21.

Plaintiff's step-three argument fails because Plaintiff ignores step two. A determination of whether an impairment meets or medically equals a Listing is, at its heart, a determination of the severity of the impairment. "Step three asks whether any 'medically severe impairment,' alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude 'substantial gainful employment.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (citing 20 C.F.R. §§ 404.1525, .1526). In other words, conducting a Listing determination is only relevant and required for an impairment that was found to be medically "severe," alone or in combination, at step two. *See id.*; 20 C.F.R. §§ 404.1520(c), .1525(a). To establish the existence of a severe impairment at step two, Plaintiff "must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *cf.* 20 C.F.R. § 404.1525(d) (stating that an

impairment "cannot meet the criteria of a listing based only on a diagnosis"). Rather, the claimed impairment "must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (internal quotation marks omitted).

Plaintiff does not challenge the ALJ's failure to find that Plaintiff's intellectual disability was a severe impairment, and, in any event, for the same reasons outlined above demonstrating that Plaintiff's possible intellectual disability was not a substantial issue on its face, there is not substantial evidence to support a finding at step two that Plaintiff's intellectual disability is "severe"—i.e., that the disability "significantly limits [Plaintiff's] physical or mental ability to do basic work activities." *See supra*; 20 C.F.R. §§ 404.1520(c), .1521(a). For example, in contrast to the "mere presence" of Dr. Schlottman's mention of Plaintiff's functioning in the mild mentally retarded range of intelligence, the record held evidence of Plaintiff's varied past work experience, as well as opinions from other physicians that Plaintiff's intellectual functioning and fund of knowledge appeared to be "average." *See Hinkle*, 132 F.3d at 1352; R. 182-89, 266-72, 310, 311. Determining whether Plaintiff's now-alleged intellectual disability was so severe as to meet or equal a Listing therefore was not called for at step three, and reversal is not warranted on this basis. *See Fischer-Ross*, 431 F.3d at 731.

## B. *Whether Plaintiff May Rely on New Evidence to Show Prejudicial Error*

Plaintiff next argues that the ALJ's failure to develop the record was not harmless because "new and material" IQ testing, conducted after the ALJ's decision was issued, demonstrates that Plaintiff's IQ was in the 60-70 range required for an intellectual

disability to meet Listing 12.05C. Pl.'s Br. at 21-22. Plaintiff thus posits that if the ALJ had ordered testing from a consultative examiner, this same IQ test result would have been reached and dictated a successful Listing 12.05C inquiry for Plaintiff in light of the other evidence in the record. *See id.*

Plaintiff's somewhat speculative argument is unavailing for several reasons. First, there was no underlying error as the ALJ did not fail to fulfill a duty to develop the record, *see supra* Part A, and the fact of a subsequent evaluation that supplies a contrary result does not in and of itself establish such an error. Second, even assuming that the ALJ had erred by not developing additional evidence of Plaintiff's alleged intellectual disability, the substance of Plaintiff's new evidence may not properly be weighed by the Court because it is not part of the administrative record in this case.

Plaintiff attached the new evidence, a Clinical Evaluation, to her opening brief in this action for judicial review. *See* Doc. No. 16-1; *see also* Pl.'s Br. at 22. The Clinical Evaluation was issued on February 16, 2012—after the ALJ's decision was issued in October 2011 but nearly one year before the Appeals Council denied review on January 25, 2013. *See* Doc. No. 16-1; Pl.'s Br. at 22; R. 1, 12-21. Despite being advised that she could submit new evidence with her request for review by the Appeals Council, there is no indication in the record, or suggestion from Plaintiff, that she asked the Appeals Council to consider the Clinical Evaluation. *See* R. 8, 10. Plaintiff did not seek leave of the Court to present non-record evidence in this action. *See* Pl.'s Br. at 22.

Defendant properly points out that the Court generally is not at liberty to evaluate evidence that was not before the SSA. *See* Def.'s Br. (Doc. No. 18) at 5-7. Under the

terms of the relevant statute, the Court must rely "upon the pleadings and transcript of the record" when deciding an appeal as to the merits of the disability determination. 42 U.S.C. 405(g) (Sentence Four). Plaintiff does not address this restriction and cites no authority suggesting that the Court may consider non-record evidence to conduct a harmless-error analysis as to the ALJ's findings at step three (or step two). *Cf. Bowman*, 511 F.3d at 1272 ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." (internal quotation marks omitted)).

In contrast to an appeal requesting reversal or modification of a disability determination by the Commissioner, the Court may properly consider additional evidence when a party requests a "Sentence Six" remand—i.e., a remand of the case to the Commissioner for additional evidence to be taken. *See* 42 U.S.C. § 405(g); *Miller v. Barnhart*, 194 F. App'x 519, 522 (10th Cir. 2006). Sentence six of § 405 authorizes such a remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (Sentence Six); *Miller*, 194 F. App'x at 522.

Here, a Sentence Six remand is not warranted for several reasons. As a threshold matter, Plaintiff expressly seeks a reversal and has not requested a remand only for consideration of further evidence. *See* Compl. at 4; Pl.'s Br. at 30. Next, even assuming the materiality of the new Clinical Evaluation, Plaintiff has made no attempt to show "good cause" for the failure to transmit the Clinical Evaluation to the SSA anytime between February 2012 and January 2013. It is not the Court's role to make this argument for Plaintiff on appeal. *See Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1265

n.3 (10th Cir. 2008). Regardless, nothing in the record, the pleadings, or the briefing suggests good cause for why Plaintiff did not request that the Appeals Council consider the Clinical Evaluation. As noted above, Plaintiff was not represented by an attorney at the hearing, but she was represented by a professional claimant's representative. This representative evidently understood that it was permissible to send additional materials to the Appeals Council prior to issuance of the final decision, as the representative submitted a detailed written statement in support of Plaintiff's request for review by the Appeals Council. R. 249-51. In this statement, the representative cites record evidence, cases, and regulations in detail but nowhere mentions the existence of new, material evidence or requests time to obtain such evidence. The Appeals Council accepted the representative's brief as "additional evidence" and made it part of the record. R. 5. Other than the representative's written statement, Plaintiff did not submit any new evidence to the Appeals Council or request any additional time to do so, although Plaintiff and her representative were expressly advised that she was permitted to take either or both of these actions. R. 8, 10; *cf.* R. 1. *See generally* 20 C.F.R. §§ 404.970(b), .976(b)(1).

For all of these reasons, the Court may not properly consider whether the contents of medical evidence that were not before the ALJ or the Appeals Council would demonstrate prejudice to Plaintiff arising from such an error. *See* 42 U.S.C. § 405(g). Reversal is not justified on this basis.[4]

---

[4] As set forth in Part C, below, the undersigned recommends that the decision of the Commissioner be reversed and remanded on other grounds. Presumably, Plaintiff upon

*C. Whether the ALJ's RFC Is Supported by Substantial Evidence*

Plaintiff contends that the ALJ's RFC assessment is flawed because it is not supported by substantial evidence in the record. The undersigned reviews this substantiality claim under the standard outlined above. *See, e.g.*, *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

Plaintiff specifically objects that the ALJ's finding that Plaintiff had no exertional limitations is flawed because the ALJ failed to adequately address Plaintiff's obesity and its effect on Plaintiff's ability to work, as he was required to do by Social Security Ruling ("SSR") 02-1p, 2000 WL 628049 (Sept. 12, 2002). For purposes of the Social Security Act, "[e]xertional limitations or restrictions affect an individual's ability to meet the seven strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). Plaintiff contends that the ALJ failed to properly consider Plaintiff's obesity, either as a disabling condition or as exacerbating Plaintiff's other conditions, and improperly rejected medical evidence as to Plaintiff's exertional limitations. *See* Pl.'s Br. at 22-24. The undersigned agrees.

At step two, the ALJ expressly found that Plaintiff's obesity was a severe impairment. R. 14. Pursuant to SSR 02-1p, an ALJ should consider "the combined effects

---

remand may request to submit any additional evidence of intellectual disability for consideration by the Commissioner, and the Commissioner will take such further action as required by law and regulation. In any event, the role of the reviewing court is only to determine if the decision as made is supported by substantial evidence and whether correct legal standards were applied. *See Poppa*, 569 F.3d at 1169.

of obesity with other impairments" and must "evaluate each case based on the information in the case record." SSR 02-1p, 2000 WL 628049, at *1, *6. Plaintiff alleges that Plaintiff's knee condition, coupled with obesity, could have restricted Plaintiff's ability as to exertional demands of work and that the ALJ should have considered information relevant to this evaluation. *See* Pl.'s Br. at 22-24.

In his RFC assessment, the ALJ noted that consulting examiner Dr. Buffington had reported that Plaintiff was 5'6" and weighed 247 pounds, with a Body Mass Index of 40. R. 16; *see* R. 266. The ALJ noted that Dr. Buffington diagnosed Plaintiff with low back pain, panic attacks, and obesity, but the ALJ failed to note that there were additional diagnoses (on the following page of Dr. Buffington's record) of foot pain, headache, memory loss, weakness, depression, sleep disturbance, and anxiety. R. 17; *see* R. 267-68. The ALJ stated: "Dr. Buffington attached a Range of Joint Motion Evaluation Chart to his report showing decreased range of motion in back lateral flexion on the right and left and normal range of motion in all other joints." R. 17; *see* R. 269-70. The ALJ also noted that consulting examiner Dr. Schlottman and reviewing physician Walter Bell, M.D., had concluded that Plaintiff was obese. R. 17, 18; *see* R. 273, 300-01. The ALJ stated: "Dr. Bell concluded that the claimant suffered from low back pain and obesity. Dr. Bell concluded that the claimant could perform light exertional work activity with no postural, manipulative, visual, communicative, or environmental limitations." R. 18; *see also* R. 299-306. In reaching his RFC assessment, the ALJ assigned little weight to the opinions of Dr. Bell and "note[d] that the claimant's back pain is not associated with any particular diagnosis." R. 18. The ALJ further found that Plaintiff "has normal range of motion in all

joints except some insignificant decreased range of motion in back lateral flexion," with "no physical limitations." R. 19.

As a general matter, having found that Plaintiff's obesity was a "severe impairment" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with that impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); R. 14. Further, in assessing Plaintiff's RFC, the ALJ was required "to give adequate consideration to the effect of [Plaintiff's] obesity in combination with her other severe impairments." *See Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008); SSR 02-1p, 2000 WL 628049, at *1, *5-6.

Here, Plaintiff's Body Mass Index of 40 equates to "extreme" obesity, which is the highest level of obesity and "represent[s] the greatest risk [of] obesity-related impairments." *See* SSR 02-1p, 2000 WL 628049, at *2; R. 16, 266; *cf.* SSR 02-1p, 2000 WL 628049, at *2 (levels describing extent of obesity "do not correlate with any specific degree of functional loss"). Although the ALJ accepted Plaintiff's diagnosis of obesity, the ALJ did not specifically identify "any functional limitations resulting from the obesity in the RFC assessment," or adequately explain why there were no such limitations, as instructed by SSR 02-1p. *See* SSR 02-1p, 2000 WL 628049, at *7; R. 16. Nor did the ALJ address whether obesity affected or exacerbated Plaintiff's severe impairments of depression, panic disorder with agoraphobia, or anxiety disorder, as instructed by SSR 02-1p. R. 14; SSR 02-1p, 2000 WL 628049, at *4 (requiring ALJ to "consider the possibility of coexisting or related conditions, especially as the level of obesity increases"), *3 ("Obesity may also cause or contribute to mental impairments such as

depression.").

Plaintiff testified that foot pain caused her to be able to stand for no more than approximately 15 minutes and to walk for no more than a block.  R. 35, 43.  She testified that knee and back pain caused her to be able to sit without changing position for no more than 30 minutes and lift no more than ten pounds, and that such pain also made it hard for her to climb stairs, bend, or stoop.  R. 43.  In assessing Plaintiff's credibility as to her subjective complaints, the ALJ stated that she had no severe physical impairments, despite his prior finding of a severe impairment of obesity.  R. 19, 14.  Thus, he did not make any findings regarding the credibility of Plaintiff's complaints about her limitations in standing, walking, sitting, climbing, bending, or stooping.  R. 19.  Even if that statement was intended to mean that Plaintiff's *mental* limitations were not caused by any physical impairment, the ALJ still failed to address Plaintiff's testimony regarding the functional limitations caused by Plaintiff's obesity, which would reasonably include the limitations she attributes to foot, knee, and back pain.

Relatedly, the ALJ did not discuss Plaintiff's knee condition at all in his RFC assessment, and the decision gives no indication that the ALJ had reviewed a medical record showing that Plaintiff had received treatment for both knees in early 2011. R. 331-32.  A record from Enid Community Clinic reflects that Plaintiff was seen with complaints of knee and leg pain and grinding sensations.  R. 331.  Plaintiff was diagnosed with osteoarthritis in both knees and twice received prescriptions for NSAIDs and Tylenol.  R. 331-32.

"[A]n ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*,

79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ, however, "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. Here, Plaintiff testified that she was receiving treatment for her knees, because "[t]hey really ache and hurt and I have spasms and I'm on a medication now. And they just hurt when I get up and walk. I can't hardly walk." R. 36. Dr. Buffington's exam, finding that Plaintiff's knees were nontender and had a full range of motion, had been conducted nearly one year earlier than Plaintiff's treatment for osteoarthritis. R. 267. The osteoarthritis evidence is sufficiently probative as to whether Plaintiff's knee condition, in conjunction with her obesity, could have restricted Plaintiff's exertional abilities (e.g., standing, walking, and lifting) or nonexertional abilities (e.g., climbing, bending, and stooping), that it warranted discussion by the ALJ as to why it should be rejected.[5]

The ALJ's failure to discuss the functional limitations that may be caused by Plaintiff's obesity, the severity of and functional limitations that may be caused by Plaintiff's osteoarthritis, or the combined effect of these conditions, is an error that undermines the ALJ's RFC finding that Plaintiff was subject to no exertional limitations or restrictions. This matter should be remanded for further consideration by the Commissioner. *See Watkins*, 350 F.3d at 1300; SSR 02-1p, 2000 WL 628049, at *1-6;

---

[5] Depending in part upon the identity of the medical personnel who treated Plaintiff, which is not identified in the record, the osteoarthritis evidence may qualify as a "treating source" opinion, generally entitled to controlling weight. *See* R. 331-32; *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1502, .1527(c). If an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

*Hamby*, 260 F. App'x at 1113.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72(c). Any such objections must be filed with the Clerk of this Court by September 9, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 26th day of August, 2014.


_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE